# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARA K. CLARIETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-2250 (RJL) |
| ) | |
| CONDOLEEZZA RICE,[1] Secretary, ) | |
| United States Department of State, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION and ORDER

This matter is before the Court on consideration of defendant's motion to dismiss or, in the alternative, for summary judgment. Having considered defendant's motion, plaintiff's opposition, and the entire record of the case, the Court will grant the motion in part, and deny the motion in part without prejudice. In addition, the Court will order plaintiff to submit a more definite statement.

### I. BACKGROUND

Plaintiff, "an American, black, female citizen" from California, was an employee of the American Embassy in Vienna, Austria from May 1996 through January 2000. Compl., ¶ 2. Plaintiff entered into a personal services contract with the United States Department of State ("State Department") effective May 13, 1996. Def.'s Mot., Ex. 6

---

[1]   The Court will grant plaintiff's "Motion for Substitution of Party" [Dkt. #11]. Pursuant to Fed. R. Civ. P. 25(d)(1), the Court automatically substitutes current Secretary of State Condoleezza Rice for her predecessor, former Secretary of State Colin Powell.



1



GOVERNMENT EXHIBIT 1

(Contract No. S0AU990-96-P-0034). According to the contract, plaintiff was to serve as an Administrative Assistant for the United States delegation to the Organization for Security and Cooperation in Europe ("USOSCE") for annual compensation of $21,344. *Id.* The term of the contract was one year, and the parties renewed the contract in 1997 and 1998.[2] *See id.* (Amendment of Solicitation/Modification of Contract, Nos. M0180 and M0106).

The USOSCE Executive Office found that the delegation lacked sufficient administrative resources to manage funds, track movements of contract staff, administer contracts, or handle complex personnel matters. Def's Mot., Ex. 8 (DeSoto Aff.) at 5. Consequently, it established a "mission staffing unit" within the USOSCE, headed by a Foreign Service Officer to whom the Administrative Assistant, plaintiff, would report. *Id.*, Ex. 7 (Request for USOSCE Program Personnel Position and Proposed Position Description), Ex. 8 at 3, 5-6. In light of this organizational change, the work requirements of the Administrative Assistant were revised somewhat. *Id.*, Ex. 8 at 6. Plaintiff allegedly opposed the restructuring plan, and actively resisted its implementation. *Id.* at 7. Evidently, plaintiff considered the revised work requirements a demotion to a purely clerical job.[3] *See* Compl., ¶ 16(c).

Plaintiff alleges that she endured "hostile work environment, harassment, and

---

[2] The contract renewal included a position upgrade and a salary increase to $34,165 effective June 16, 1998. Def.'s Mot., Ex. 6 (Amendment of Solicitation/Modification of Contract, No. M0106). Apparently the parties did not renew the contract formally upon its expiration effective May 12, 1999.

[3] Plaintiff was unsuccessful in an attempt to revise and expand her work requirements. *See* Def.'s Mot., Ex. 15 (February 4, 1999 memorandum regarding plaintiff's proposed work requirements).

2

racial and gender discrimination" under Jeffrey Hovenier, who became her supervisor in April 1999. Compl., ¶ 16(c). Under Oscar DeSoto, who became her supervisor in December 1999, plaintiff alleges that her work environment "changed drastically." *Id.* For the alleged harassment and discrimination suffered under Hovenier's supervision, she states that she filed a formal complaint of discrimination with the Embassy Personnel Officer on December 19, 1999. *Id.*, ¶ 6. Approximately one month later, she alleges that DeSoto demoted her to a purely clerical position on January 14, 2000 and placed her on probation, solely on the basis of her race and gender. *Id.*, ¶¶ 6, 16(c). She further alleges that, barely two weeks later, on January 24, 2000, DeSoto fired her.[4] *Id.*, ¶¶ 6, 16(c), 17(4); Def.'s Mot., Ex. 10 (Amendment of Solicitation/Modification of Contract, No. M0005, effective January 25, 2000, and supporting memoranda).

Plaintiff challenged her termination by filing a complaint with the State Department's Office of Equal Employment Opportunity and Civil Rights on March 3, 2000.[5] Compl., ¶ 7; Def.'s Mot., Ex. 1 (Formal Complaint of Discrimination and attachment). Although the agency allegedly suggested a desire to settle the case after its initial investigation, plaintiff stated that the State Department issued its Final Agency

---

[4] A termination letter from the Embassy's Personnel Officer stated that plaintiff was separated for unsatisfactory performance, and that she was placed on administrative leave until February 25, 2000. Def.'s Mot., Ex. 10 (January 26, 2000 letter from Pat Lacina, Personnel Officer).

[5] Plaintiff amended her Formal Complaint of Discrimination in March 2000. Compl., ¶ 7; Def.'s Mot., Ex. 2 (Plaintiff's March 3, 2000 Memorandum). She alleged that she was scheduled to travel to the Republic of Georgia to serve as an election observer, and that members of the USOSCE delegation prevented her participation. Def.'s Mot., Ex. 1 at 1. According to plaintiff, such interference constituted harassment and reprisal. *Id.* at 2-5.

Decision in November 2002 upholding the termination. Compl., ¶¶ 8-10. Plaintiff appealed the agency's decision to the Equal Employment Opportunity Commission ("EEOC") in December 2002. *Id.*, ¶ 11. On May 13, 2004, the EEOC affirmed the State Department's decision, and in June 2004 denied plaintiff's request for reconsideration. *Id.*, ¶¶ 13-14 & Ex. B (EEOC Decision), D (Denial of Request for Reconsideration).

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq.* Compl., ¶ 41. She alleges that defendant terminated her employment unlawfully on the bases of her race, color, gender, and national origin, and in reprisal for having filed a complaint of discrimination. *Id.*, ¶ 44. In addition to these discrimination claims, plaintiff brings tort claims for "the publication of defamatory statements, . . . damage to her reputation, same, mortification, and emotional distress."[6] *Id.*, ¶ 47.

## II. DISCUSSION

### A. *Standard of Review*

#### 1. Motion to Dismiss

A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The ruling on a motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232,

---

[6] The Court presumes that the "emotional distress" claim is a claim of intentional infliction of emotional distress. *See* Compl., ¶ 46.

4

236 (1974). The factual allegations of the complaint are presumed to be true and are construed liberally in plaintiff's favor. *See, e.g., United States v. Phillip Morris, Inc.*, 116 F.Supp. 2d 131, 135 (D.D.C. 2001). The Court is not obligated, however, to draw factual inferences that are not supported by the facts alleged. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Because the Court has considered matters outside of the pleadings that the parties presented in support of their respective positions, it treats the motion in part as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b).

### 2. Motion for Summary Judgment

Summary judgment is granted to the movant if it has shown, when the facts are viewed in the light most favorable to the non-movant, that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150

(D.C. Cir. 1996).

> B. *Plaintiff has not exhausted administrative remedies with respect to her claims for hostile work environment, discrimination based on a disability, and reprisal for whistleblower activity.*

Generally, there are two prerequisites to maintaining a Title VII claim in district court: a plaintiff must timely file an EEOC charge and she must timely file a civil complaint after receipt of a right-to-sue letter. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). Title VII complaints are liberally construed. *See Caldwell v. ServiceMaster Corp.*, 966 F.Supp. 33, 49 (D.D.C. 1997). Liberal interpretation, however, cannot be used to bypass Title VII's administrative processes. *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996). The requirement that a plaintiff pursue employment discrimination claims before the EEOC prior to filing a civil action in federal court serves two important purposes: notice to the employer of claims of discrimination against it, and a narrowing of the issues for prompt adjudication and decision. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 n.235 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086 (1978). A lawsuit following an EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d at 907 (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citations and internal quotation marks omitted)).

The State Department's Office of Equal Employment Opportunity and Civil Rights accepted the following issue for investigation:

> That because of [plaintiff's] race, color, sex, national origin and reprisal, [she was:] 1) not allowed to perform the duties of [her]

6

> position as an Administrative Assistant to the U.S. OSCE Delegation; 2) terminated from [her] position as an Administrative Assistant to the U.S. OSCE Delegation; 3) denied the opportunity to serve as an election observer in the Republic of Georgia; and 4) denied payment of more than 260 hours of accrued overtime and 240 hours of accrued vacation leave [she is] entitled to for [her] time with the OSCE Delegation.

Def.'s Mot., Ex. 4 (May 1, 2000 letter regarding EEO Case Number 00-38). These were indeed the claims raised in plaintiff's Formal Complaint of Discrimination. See id., Ex. 1 (Formal Complaint of Discrimination and attached Memorandum). In addition, these were the only matters investigated at the agency level, and the only matters presented to the EEOC on appeal. See Def.'s Mot., Ex. 5 (Report of Investigation), 14 (EEOC Decision). Conspicuously absent were plaintiff's claims for hostile work environment, reprisal for whistleblower activity, and claims under the Rehabilitation Act.[7] See Def.'s Ex. 1-2 (Formal Complaint of Discrimination and March 30, 2000 Amendment, respectively), Ex. 3 (EEO Counselor's Report) at 1-2, Ex. 5 (Report of Investigation) at 1. It cannot be said that plaintiff gave defendant fair warning of these claims against the agency, such that the agency had an opportunity to address or correct them short of litigation. Plaintiff's failure to exhaust her administrative remedies with respect to these three claims bars their consideration by the Court. See Hunt v. District of Columbia

---

[7] On the Formal Complaint of Discrimination, plaintiff checked boxes indicating her intent to file a claim for discrimination based on race, color, reprisal, national origin, and sex. See Def.'s Mot., Ex. 1 at 1. Neither this form nor her lengthy supporting memorandum nor her amendment mentions hostile work environment, whistleblower activity, or disability discrimination. Nor is it clear from plaintiff's descriptions of additional proposed amendments that she intended to raise claims of hostile work environment, reprisal for whistleblower activity, or disability discrimination. See Pl.'s Opp. at 2-4.

7

*Dep't of Corrections*, 41 F.Supp.2d 31, 36 (D.D.C. 1999) (dismissing gender discrimination claim for failure to exhaust admin remedies because neither checked off box on EEOC complaint form nor mentioned claim in complaint itself).

### C. Plaintiff fails to state a claim regarding the processing of her discrimination complaint.

Plaintiff alleges that the State Department acted in bad faith in its investigation of her discrimination complaint. *See* Compl., ¶¶ 34-40. She alleges that the department conducted two investigations, the second of which was designed "to suppress sworn testimony and evidence collected in the initial official investigation." *Id.*, ¶ 35. In addition, plaintiff asserts that the Report of Investigation to the EEOC violated applicable regulations, and that it was "incomplete, thus inaccurate, therefore misleading, and therefore false." *Id.*, ¶ 36. For defendant's alleged wrongful acts, plaintiff demands, among other things, an order compelling defendant to produce a true and complete Report of Investigation that is consistent with the "results of the initial Agency investigation conducted . . . in May 2000." *Id.*, ¶ 51(1-2). This claim is not actionable.

Plaintiff's only cause of action under Title VII is for discrimination. The provisions of Title VII "do[] not create an independent cause of action for the mishandling of an employee's discrimination complaints." *Young v. Sullivan*, 733 F.Supp. 131, 132 (D.D.C. 1990), *aff'd*, 946 F.2d 1568 (D.C.Cir. 1991); *see Nelson v. Greenspan*, 163 F.Supp.2d 12, 18 (D.D.C. 2001) (dismissing claim that defendant failed to follow proper procedure in the processing of complaints which ultimately resulted in settlement agreement).

8

*D. The Court will order plaintiff to file a more definite statement.*

The Court has reviewed the complaint, keeping in mind that a complaint filed by a *pro se* litigant is held to a less stringent standard than a formal pleading drafted by a lawyer. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even a *pro se* litigant, however, must comply with the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Rule 8(a) of the Federal Rules of Civil Procedure requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the minimum requirement of Rule 8 is to give fair notice to defendants of the claims being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense, and to determine whether the doctrine of *res judicata* applies. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).

Plaintiff's legal training has not served the parties or the Court well.[8] Her complaint is poorly organized, and frequently makes vague or conclusory statements. For example, it is unclear whether plaintiff exhausted administrative remedies with respect to other Title VII claims, whether any of her claims are time-barred, or whether she adequately alleges discrimination on other bases under Title VII. Additionally, plaintiff raises claims of intentional infliction of emotional distress and defamation without any supporting factual allegations. Further, with respect to plaintiff's contract and tort claims for money damages against the State Department, it is unclear whether plaintiff has presented the claims to the agency, and, if so, whether this Court has subject matter jurisdiction over such claims. It is no surprise, then, that defendant finds

---

[8] Plaintiff represents that she is a licensed member of the California State Bar. See Def.'s Mot., Ex. 1 (March 3, 2000 Memorandum) at 3.

9

the pleading so vague and ambiguous that it now moves for a more definite statement. *See* Def.'s Mot. at 21. The motion will be granted.

### III. CONCLUSION

The Court concludes that plaintiff failed to exhaust administrative remedies with respect to her claims for hostile work environment, reprisal for whistleblower activity, and for discrimination under the Rehabilitation Act. In addition, the Court concludes that plaintiff fails to state a claim upon which relief can be granted regarding the processing of her discrimination claim. Defendant's motion will be granted in part and denied in part, and plaintiff will be ordered to file a more definite statement.

Accordingly, it is hereby

ORDERED that plaintiff's motion to substitute [Dkt. #11] is GRANTED. It is further

ORDERED that defendant's motion to dismiss [Dkt. #13] is GRANTED IN PART. Plaintiff's claim regarding the processing of her discrimination complaint is dismissed for failure to state a claim upon which relief can be granted. In all other respects, the motion to dismiss is DENIED WITHOUT PREJUDICE. It is further

ORDERED that defendant's motion for summary judgment [Dkt. #14] is GRANTED IN PART, having concluded that plaintiff failed to exhaust administrative remedies on her claims of hostile work environment, reprisal for whistleblower activity, and discrimination based on disability. In all other respects, the summary judgment motion is DENIED WITHOUT PREJUDICE. It is further

ORDERED that, within 45 days of entry of this Order, plaintiff shall file a more definite statement. Plaintiff's failure to file a more definite statement timely may result

in dismissal of this action.

SO ORDERED.

_____
RICHARD J. LEON
United States District Judge

Date: 10/17/05

11